1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

# US DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Howard R. Fogle, Jr., and Sharon Fogle,<br><br>    Plaintiffs,<br><br>vs.<br><br>Wilmington Finance, a division of AIG Federal Savings Bank, CountryWide Home Loans, and Saratoga First Guarantee Funding,<br>    Defendants. | § Case No.<br>§<br>§ COMPLAINT FOR<br>§<br>§ INJUNCTIVE RELIEF,<br>§<br>§ VIOLATIONS OF TRUTH-IN-<br>§ LENDING ACT, VIOLATIONS OF<br>§ REAL ESTATE SETTLEMENT<br>§ PROCEDURES ACT, NEW HAMPSHIRE<br>§ UNFAIR DECEPTIVE OR<br>§ UNREASONABLE COLLECTION<br>§ PRACTICES ACT, RSA 358C, NEW<br>§ HAMPSHIRE FORECLOSURE<br>§ STATUTE, RSA 4479, BREACH OF<br>§ CONTRACT, BREACH OF FIDUCIARY<br>§ DUTY, UNJUST ENRICHMENT, FOR<br>§ WRONGFUL FORECLOSURE, AND<br>§ FRAUD<br>§ |

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiffs, Howard and Sharon Fogle Jr., by and through the undersigned counsel, hereby bring

this action against Wilmington Finance, a division of AIG Federal Savings Bank (hereinafter

"Wilmington"), Saratoga First Guarantee Funding (hereinafter "Saratoga"), CountryWide Home

Loans (hereinafter "CountryWide"), and John and Jane Doe (collectively, the "Defendants"), for

serious breaches of their fiduciary duties, for wrongful foreclosure, for violations of the Real Estate

Settlement Procedures Act ("RESPA"), for violations of the Truth-in-Lending Act ("TILA"), for

violations of the New Hampshire foreclosure statute, RSA 479, for violations of  the New

Hampshire Unfair, Deceptive or Unreasonable Collection Practices Act, RSA 358C, for Fraud,

to have a trustee's sale (foreclosure) enjoined; to have such trustee=s sale (foreclosure) set aside if and when the same shall occur with or without injunction and/or to obtain damages for wrongful foreclosure; to obtain injunctive relief from enforcement of any and all foreclosure related remedies, including Defendant's attempts to take possession of the Plaintiffs' property through unlawful detainer procedures under New Hampshire law; and to obtain declaratory relief. Exhibit A attached thereto is fully incorporated herein as if copied and set forth at length.

## I

### JURISDICTION/VENUE

1.    This Court has jurisdiction of the state claims pursuant the doctrine of pendent jurisdiction of the New Hampshire Unfair Deceptive or Unreasonable Collection Practices Act, RSA 358C, and wrongful foreclosure claims under the New Hampshire Foreclosure Statute, RSA 479, pursuant to 28 U.S.C. §1367.

2.    This Court has jurisdiction of the TILA and RESPA claims under 15 U.S.C. §1640(e) and 12 U.S.C. §2614.

3.    Venue is proper in this district because the real property which is the subject of this suit is in this district, Plaintiffs reside and are domiciled in this district, and the Plaintiffs do business in this district.

## II

### THE PARTIES

4.    Plaintiffs are citizens of the State of New Hampshire, and are "consumers" as defined by 15 U.S.C. §1692a (3).

5.    Defendants Wilmington, CountryWide, and Saratoga are engaged in lending and/or servicing as to federally related mortgage loan transactions, such as the one at issue in this

suit.

6.    The principal purpose of the business of Defendants Wilmington, and Saratoga is the extension of consumer credit. Defendant

7.    CountryWide is in the business of collecting consumer debts in this jurisdiction.

8.    A principal purpose of the business of Defendant CountryWide is the collection of consumer debts using the mails and telephone, and it regularly attempts to collect consumer debts for others.

9.    Defendant CountryWide is a "debt collector" as defined by 15 U.S.C. §1692a(6) New Hampshire Unfair Deceptive or Unreasonable Collection Practices Act, RSA 358C.

10.    Upon information and belief, Defendant Wilmington, is a Delaware corporation having principal offices at 401 Plymouth Road, Ste 400, Plymouth Meeting, PA 19462, and doing business in New Hampshire. Wilmington may be served with process by serving its president, managing member, or other officer in charge at the foregoing address.

11.    CountryWide is California corporation, having its principal offices at P.O. Box 10229, Van Nuys, CA 91410-10229, and doing business in New Hampshire. It may be served with process by serving its President, managing member, or other officer in charge at the foregoing address.

12.    Saratoga is a New York corporation, having its principal offices at 21 Congress Street, Saratoga Springs, NY 12806, and doing business in New Hampshire. It may be served with process by serving its President, managing member, or other officer in charge at the foregoing address.

13.    Plaintiffs also bring this action against any person relevant to the acts and claims alleged therein, but who may be identified during discovery in this case.

COMPLAINT

## III
## DEMAND FOR JURY TRIAL

14.     Plaintiffs DEMAND A JURY TRIAL pursuant to Rule 38 (b), and hereby state as follows:

## IV
## DEFINITIONS

As used in this Complaint:

15.     The terms "amount financed," "annual percentage rate," "closed-end credit," consumer," "consumer credit," "consummation," "credit," "creditor," "dwelling," "finance charge," "mortgage," "open-end credit," "payment schedule," "points and fees," "residential mortgage transaction," "reverse mortgage transaction," "security interest," and "total of payments" are defined as set forth in sections 103 and 128 of TILA, 15 U.S.C. §1602 and §1638, and Sections 226.2, 26.4, 226.18, 226.22, 226.32, and 226.33 of Regulation Z, 12 C.F.R. §§ 226.2, 26.4, 226.18, 226.22, 226.32, and 226.33

16.     The term "Regulation Z" means the regulation the FRB promulgated to implement and  HOEPA, 12 C.F.R. §226, as amended. The term also includes the FRB Official Staff Commentary on Regulation Z, 12 C.F.R. §226, supp.1, as amended.

17.     The term "TILA" means the Truth in Lending Act, 15 U.S.C. §§ 1601-1666j, as amended. TILA, which took effect on July 1, 1969, is intended to promote the informed use of consumer credit by requiring creditors to disclose credit terms and costs, requiring additional disclosures for loans secured by consumers' homes, and permitting consumers to rescind certain transactions that involve their principal dwellings.

## V

## **DEFENDANT'S BUSINESS**

18.     At all times relevant to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as the term "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## **VI**

## **BACKGROUND**

19.     The federally related mortgage loan transactions at the root of this case (sometimes hereinafter the AFogle Loan@) were closed on or about November 28, 2005 ("Closing"), whereupon Plaintiffs executed an adjustable rate Note to Defendant Wilmington in the original principal amount of $294,750 (ANote@), and a mortgage securing such Note, covering real property, which was then and now remains the permanent residence of the Plaintiffs. Reference is made to such instruments, including the mortgage of record in the Official Records of the County of Merrimack, to show the full description of such real property, known locally as 21 Old Gilmanton Rd., Canterbury, NH 03224, Merrimack County, ("Property").

20.     Defendant Countrywide, as Servicer for Wilmington, has started the foreclosure process on Plaintiffs' property by sending them an acceleration letter.

## **COUNT I (TILA)**

21.     Defendants Wilmington and Saratoga failed to provide that the Note contained a variable rate feature, in violation of 12 C.F.R. §226.18(f)(i). Defendants Wilmington and Saratoga  failed to provide that the box referencing this feature was checked, not withstanding the TIL Disclosure Statement is defective altogether.

22.     Although there was a statement on the TIL indicating that variable rate disclosures were provided earlier, the Defendants Wilmington and Saratoga failed to check the required box indicating as such, in violation of 12 C.F.R. § 226.18(f)(iii).

23.     Defendants Wilmington and Saratoga failed to provide that, either at the time of application or before Plaintiffs paid a nonrefundable fee, or if the application was received over the telephone, that the **Good Faith Estimate** was mailed to Plaintiffs within three business days following receipt of the application.

24.     Although Defendants Saratoga and Wilmington provide a document at closing entitled, "LETTER OF EXPLANATION", in an effort to comply with TILA, RESPA and Federal Home Loan requirements, as the letter states, the information fails to provide required information such as would be found in the Consumer Handbook on Adjustable Rate Mortgages. No such Handbook was present among the loan documents, thereby violating §226.19 (b) (1).

25.     Since the TIL was not provided at all over the history of the loan, except upon Plaintiffs' inquiry and/or when Defendants offered a refund to Plaintiffs if they would sign a release form and sign documents that were not provided at closing or at any time previously, Wilmington and Saratoga failed to provide a brief description of the APR, thereby violating 12 C.F.R. §226.18(e).

26.     Defendant Wilmington failed to disclose any security interest taken, thereby violating, 15 U.S.C. 1638(a)(9): Reg. Z, 12 C.F.R. § 226.18(m).  Such disclosure is typically found on the TIL Statement Disclosure.

27.     Defendants Wilmington and Saratoga failed to provide that disclosures were furnished before consummation. Defendants Wilmington and Saratoga failed to provide that

preliminary disclosures were given to borrowers, as required by *12 C.F.R. §226.17(b) and 226.19(b)*.

28.     Plaintiffs' loan was a variable rate loan, yet the payment schedule shows 359 level payments of $1,787.18, and 1 irregular payment of $1,788.74. Therefore, the Defendants Wilmington and Saratoga failed to provide a payment schedule reflecting all components of the finance charge to repay loan principal, interest on the loan, and any other finance charge payable by the Plaintiffs after consummation of the transaction properly reflecting the terms of the NOTE, thereby violating Reg. Z, Section 226.18(g).

29.     Due to the fact that the TIL is defective, information required to be provided on the TIL has been asserted here as separate violations. Defendants Wilmington and Saratoga failed to provide a description of the total of payments, thereby violating 12 C.F.R. § 226.18(h).

30.     There is nothing indicated on the TIL regarding late payments. Defendants Wilmington and Saratoga failed to provide whether a late payment charge is applicable, thereby violating 12 C.F.R. § 226.18 (l).

31.     No TIL disclosure was provided altogether. Therefore, the Defendants Wilmington and Saratoga failed to provide a statement referring to the contract document for specified information, in violation of 12 C.F.R. §226.18(p).

32.     Defendants Wilmington and Saratoga failed to provide an appropriate assumption disclosure for residential mortgage transactions, thereby violating 12 C.F.R. §226.18(q).

33.     Defendants Wilmington and Saratoga failed to provide a preliminary or any separate disclosure that the note contains a variable rate feature pursuant 12 C.F.R. §226.18(f) (2) (i). On the Note itself, there is a statement that the Note contains provisions allowing for

-7-

1  changes in the interest rate, monthly payment, and principal balance. This, however, does not

2  constitute a disclosure.

3    34.    The Amount Financed was overstated by $1453.56. Overstatements of the amount

4  financed are arguably a non-violation according to the Office of the Comptroller of Currency.

5  However, the erroneous amount financed will trigger an error in the calculation of the APR.

6    35.    Defendants Wilmington and Saratoga failed to provide an Itemization of Amount

7  Financed ("IOAF"), or disclosure informing Plaintiffs that they were entitled to that disclosure, in

8  writing, as required by *12 C.F.R. §226.18(c)*. The Good Faith Estimate was not timely or accurately

9  provided, and is therefore defective.

10

11    36.    Certain important disclosures were missing altogether. Disclosures, therefore, do not

12  meet the requirements of 12 C.F.R. § 226.17(a)(1), which requires that disclosures be clear,

13  conspicuous, grouped, segregated, and in writing in a form the consumer can keep.

14

15    37.    Defendants Wilmington and Saratoga failed to provide that disclosures as to the

16  circumstances that permit a rate increase were provided, in violation of 12 C.F.R. §226.18 (f) (i).

17    38.    Due to the fact that no Variable Rate disclosures whatsoever were provided, the

18  Defendants Wilmington and Saratoga failed to provide disclosures regarding lifetime limits on

19  the rate increases, in violation of 12 C.F.R. §226.18(f) (1)(ii).

20    39.    Defendants Wilmington and Saratoga failed to provide the effects of the increase

21  of the rate, in violation of 12 C.F.R. §226.18(f) (1) (iii).

22

23    40.    Although Defendants Wilmington and Saratoga provided an example on their

24  LETTER OF EXPLANATION, it appears to have been provided as closing. No dates or

25  signatures appear on the subject letter. Defendants Wilmington and Saratoga failed to provide a

26

27

hypothetical example of new payment terms at the time required, in violation of 12 C.F.R. §226.18(f)(1)(iv).

41.    Defendants Wilmington and Saratoga failed to provide, relative to the variable rate mortgage contract, the maximum possible interest rate, in violation of 12 C.F.R. §226.30(a).

42.    Plaintiffs did not receive any Notices of the Right to Cancel. Defendants Wilmington and Saratoga therefore violated 12 C.F.R. §226.23(b)/§226.15(b).

43.    Due to the fact that the Defendants Wilmington and Saratoga failed to provide any notices at all, all provisions of the Act regarding Rescission notice information are asserted here as violations of 12 C.F.R. §226.23(b)(1)(i—5) and 12 C.F.R. §226.15(b)(2-5).

## COUNT II (RESPA)

44.    The Plaintiffs repeat, reallege, and incorporate by reference the foregoing paragraphs.

45.    There were charges missing or inaccurate on the HUD-1 Settlement Statement (hereinafter "HUD-1"), in violation of 12 U.S.C. §2603 (a) and (b) and 24 C.F.R. S3508 (a) and (b).

46.    Plaintiffs were assessed a yield spread premium in the amount of $4,142.40 (Line 815 of the HUD-1). Defendants violated the Real Estate Settlement Procedures Act (hereinafter "RESPA") in the deceptive disclosures regarding the yield spread premium. These unearned fees received by Saratoga at closing were excessive, and may constitute an illegal kickback as defined in 12 U.S.C. §2607, and in violation of 24 C.F.R. 3500.14.

47.    Plaintiffs were also assessed a loan origination fee in of $10,530.25. See line 801 of the HUD-1, and a processing fee of $575 (Line 808 of the HUD-1). The multiple fees charged by Saratoga possibly violated 12 U.S.C. §2607. Total broker's fees were $15,247.75, and were

COMPLAINT

in excess of 5% of the loan amount.

48.     Saratoga performed no services for the yield spread premium of $4,142.50, and the excessive origination fees of $10,530.25 charged at closing.

49.     Any person who, pursuant to any agreement or understanding, gives or receives a fee or a thing of value (including payments, commissions, fees, gifts, or special privileges) for the referral of settlement business violates RESPA (section 8). Payments in excess of the reasonable value of goods provided or services rendered are considered kickbacks. Appendix B and OCC bulletin 96-8 (section 8 transactions) provide guidance on the meaning and coverage of the prohibition against kickbacks and unearned fees. In connection with the Fogle Loan, RESPA 24 C.F.R. 3500.14 was violated when Saratoga, received $10,530.25 in loan origination fees (Line 801, HUD-1), plus a processing fee of $575 ( Line 808 HUD-1), and a yield spread premium of $4,142.50 (Line 815 HUD-1).

50.     Defendants Wilmington and Saratoga failed to provide that the Good Faith Estimate (AGFE@) was delivered or mailed to Plaintiffs within three business days of the time Plaintiffs=s received Defendants' application (24 C.F.R. 3500.7(a)). There were two separate GFEs, dated the same date, but containing different information. Until discovery of the actual receipts from service providers, it cannot it be determined if the HUD 1 Settlement Statement properly reflects the closing costs.

51.     Since the Lender did not provide the GFE, then the lender failed to provide:

        a.     The lender's name;

        b.     The estimate of charges listed in the HUD-1 (24 C.F.R. 3500.7(c )
               (1);

COMPLAINT

c.    The estimate of all other charges customary to the locality (24 C.F.R. 500.7 ( c)(2);

d.    Any GFE later provided is defective, since it was not provided pursuant to the timing requirements of the regulations. The GFE was provided on the day of Closing, November 28, 2005.

52.    Defendants failed to obtain a written acknowledgment of the servicing disclosure from Plaintiffs per 24 C.F.R. 3500.21(c).

53.    Defendants Wilmington and Saratoga failed to provide that a Good Faith Estimate was given before or at consummation, thereby violating 12 U.S.C. §2604 (d). Two separate GFEs were provided, each with different information, but dated the same date, neither of which appears to have been given according to the timing requirements, at application, or within three days of receipt of application. Additionally, the application is not signed or dated.

54.    Wilmington and Saratoga failed to provide that material disclosures, as defined in 12 C.F.R. §226.23(a)(3) to mean the required disclosures of the APR, the finance charge, the amount financed, the total loan payments, payment schedule and the disclosures and limitations referred to in 12 C.F.R. §226.32(c) and (d), were given the borrower.

55.    At no time during the history of the loan transaction were Plaintiffs made aware that Wilmington paid directly to Saratoga, without the knowledge of Plaintiffs/ Borrowers, out of its own pocket a Yield Spread Premium of $4,142.50, which in turn deceptively up-sold the interest rate ,a fact concealed from Plaintiffs.

56.    By the foregoing acts, Defendants Wilmington and Saratoga concealed the true cost of credit to Plaintiffs, defeating the purpose of TILA, and damaging Plaintiffs. Plaintiffs, had they been appropriately informed, could have sought other sources of credit or negotiated different terms, but were unable to do so by virtue of Wilmington and Saratoga's conduct, for

11

which conduct such Defendants are now responsible.

## COUNT III (Right of Rescission)

57.    The Plaintiffs repeat, reallege, and incorporate by reference the foregoing paragraphs.

58.    No Notices of the Right to Cancel were provided. Defendants Wilmington and Saratoga therefore violated 226.23(b)/226.15(b).

59.    Due to the fact that Plaintiffs were not provided any notices at all, all provisions of the Act regarding Rescission notice information is asserted here as violations of 226.23(b)(1)(i—5) and 226.15(b)(2-5).

60.    Plaintiffs have an extended right to rescind until November 28, 2008, and have exercised this right by sending letters of rescission to Wilmington, Saratoga, and CountryWide.

## COUNT IV (Breach of Contract)

61.    The Plaintiffs repeat, reallege, and incorporate by reference the foregoing paragraphs.

62.    Plaintiffs have allegedly been damaged under a Quasi Contract by 1) paying interest for the YSP to which Wilmington is not entitled, 2) paying a Broker's fee over time by way of the interest to Wilmington, and 3) Saratoga receiving $4,142.50 and $10,530.50 + $575.00 for compensation that otherwise was not in a contract, as possibly required by New Hampshire law. In so doing, the Defendants Wilmington and Saratoga, breached their contractual duties to Plaintiffs, and did not act in accord with their duty of good faith and fair dealing toward Plaintiffs.

## COUNT V (FDCPA)

63.     The Plaintiffs repeat, reallege, and incorporates by reference the foregoing paragraphs. Defendant CountryWide's violations of the FDCPA include, but are not limited to the following.

64.     The Defendant CountryWide attempted to collect a consumer debt ("Debt") allegedly owed by Plaintiffs. The obligation required Plaintiffs to pay money arising out of transactions in which money, property, insurance, or services were the subject thereof and the same were primarily for personal, family, or household purposes.

65.     The foregoing acts and omissions were undertaken on behalf of CountryWide by their respective officers, agents, or employees acting at all times relevant hereto within the scope of that relationship. The foregoing acts and omissions of CountryWide were undertaken willfully, intentionally, knowingly, and/or in gross disregard of the rights of the Plaintiffs. The foregoing acts and omissions of the servicer Defendant CountryWide were undertaken indiscriminately and persistently, as part of CountryWide's regular and routine collection efforts, and without regard to or consideration of the identity or rights of the Plaintiffs.

66.     In violation of 15 U.S.C. §1692d, CountryWide engaged in conduct, the natural consequence of which was to harass, oppress, or abuse a person in connection with the collection of a debt, which conduct included failing to exercise reasonable care in ascertaining the facts prior to making a demand for payment.

67.     In violation of 15 U.S.C. §1692e(5) and the "least sophisticated consumer standard," Defendant CountryWide threatened to take an action which could not legally be taken, or that is not intended to be taken, to-wit, the threat of foreclosure.

68.     In violation of 15 U.S.C. §1692f, Defendant CountryWide used unfair or unconscionable means to collect or attempt to collect a consumer debt, which means included

13

1  failing to exercise reasonable care in ascertaining the facts prior to making a demand for

2  payment.

3      69.    In violation of 15 U.S.C. §1692g(b) Defendant CountryWide attempted to collect

4  a debt without first obtaining verification of the debt, and of the name and address of the original

5  creditor.

6

7  ## COUNT VI (RSA 358C)

8

9      70.    The Plaintiffs repeat, reallege, and incorporate by reference the foregoing

10  paragraphs.

11      71.    The Defendants' violations of the New Hampshire Unfair Deceptive or

12  Unreasonable Collection Practices Act, RSA 358C, include misrepresenting the quality,

13  characteristics, benefits and rights of the services involved in the transaction known as the Fogle

14  Loan.

15      72.    In violation of RSA 358C, Defendant CountryWide threatened to take an action

16

17  prohibited by law, in sending Plaintiffs an acceleration letter.

18      73.    The violations of FDCPA are incorporated here and realleged, as several

19  violations of RSA 358 C.

20      74.    But for the misrepresentations by Defendants of the services of each in the

21  consumer lending transaction with Plaintiffs, Plaintiffs would not have sustained their resulting

22

23  damages, and would not have entered into the Fogle Loan.

24      75.    Defendants stand responsible for those misrepresentations and resultant damages

25  by virtue of their claim of owning and holding the note(s) and related lien(s).

26

27  ## COUNT VII (Breach of Fiduciary Duty)

76.     The Plaintiffs repeat, reallege, and incorporate by reference the foregoing paragraphs.

77.     Saratoga had a fiduciary duty to Plaintiffs, which duty comprehends within it the duty of good faith and fair dealing, to obtain a loan for them on the best possible terms, to fully explain each and every element and cost of the overall loan transaction, and generally, to act in Plaintiffs' best interest in consummation of the entire loan transaction. Saratoga breached its fiduciary duty to Plaintiffs by causing them to absorb costs which were not fully or appropriately disclosed, as set forth above, including the discount points. Such breaches of fiduciary duty resulted in damage to Plaintiffs, in increased costs for the Fogle Loan and in the potential loss of their home through foreclosure and eviction.

## COUNT VIII (UNJUST ENRICHMENT)

78.     The Plaintiffs repeat, reallege, and incorporate by reference the foregoing paragraphs.

79.     Defendants Wilmington and Saratoga, and their agent had an implied contract with the Plaintiffs to ensure Plaintiffs understood all the fees they would pay to the Defendants to obtain credit on their behalf, and a further duty not to charge any fees that are not reasonably related to the settlement of the loan entered into, and with full disclosure to the Plaintiffs.

80.     The loan origination fees, YSP and processing fees total over 5% of the loan amount, and are excessive.

81.     No contract or preliminary disclosures under TILA were given to Plaintiffs for the excessive loan origination fees in the amount of $10,530.25, the undisclosed YSP of $4,142.50 or the processing fees of $575.

15

COMPLAINT

82.    Defendants and/or its agent have been unjustly enriched at the expense of the Plaintiffs, and considering the circumstances, allowing the Defendants to maintain the benefit would be contrary to the rules of equity.

83.    Defendants and/or its agent had full knowledge or had a duty to know that the above excessive fees would adversely affect the interest rate, from which Plaintiffs received no benefit.

84.    Defendants cannot in good conscience keep the benefits from their agent's actions of charging the above excessive fees without full disclosure of it's ramifications to the Plaintiffs, and undisclosed by preliminary disclosures required by federal and state law.

85.    Plaintiffs demand the following restitution from Defendants: Actual and Exemplary damages, costs and reasonable attorney's fee.

## COUNT IX (Wrongful Foreclosure)

86.    The Plaintiffs repeat, reallege, and incorporate by reference the foregoing paragraphs.

87.    For all of the foregoing reasons, the Defendants' proceeding to begin the foreclosure process against Plaintiffs' property is wrongful, and the same should be enjoined, and, if permitted to be conducted, thereafter set aside.

## COUNT X (FRAUD)

88    Plaintiffs repeat, reallege and incorporate by reference the foregoing paragraphs.

89.    Defendants engaged in fraud by misrepresenting the interest rate that would be applied to Plaintiffs' mortgage loan. The Defendants gave Plaintiff a Truth in Lending Disclosure Statement, as required by federal law, which indicated the interest rate on the mortgage loan had an annual percentage rate ("APR") of 6.399%. The APR is the relevant

COMPLAINT

variable a consumer will use to compare loans with different terms and conditions. Each of the different loans must define an APR, so that the consumer can determine if he can obtain an equivalent mortgage at a lower interest rate.

90.     In an effort to induce Plaintiffs to take the Defendants' mortgage, the Defendants went on to represent, in the Truth and Lending Disclosure Statement, that the total amount of interest paid over the entire term of the loan would be $353,606.61. By the wording of this statement of a fixed amount of interest, any reasonable person would be led to believe that the total interest payable on this loan was fixed, as if Defendant were offering Plaintiffs a fixed rate mortgage. However, the Defendants in fact offered Plaintiff an adjustable rate mortgage ("ARM"). The initial term of the loan would start at an interest rate of 6.00%, but then increase beginning July 2006 to 5.45% + the London Interbank Rate of Interest (LIBOR). Thus, if LIBOR was 4% in July 2006, Plaintiffs would be required to pay 9.45% interest on the remaining balance of the mortgage loan. The bank reserved the right to increase the interest rate on Plaintiff's loan every six months thereafter until a ceiling interest rate of 12% was reached.

91.     With the range of possible interest rates on this loan that could increase every six months by an unspecified and indeterminate amount ( as no one knows precisely what LIBOR rate will prevail in future years), the Defendants could not predict how much total interest would be paid on this ARM. Yet, rather than disclosing a range of different total interest payments that might occur over the term of this loan, Defendants instead chose to lure laintiffs with false advertising of the total interest to be paid as a fixed amount defined with precision down to the cent.

92.     The Truth in Lending Act (TILA), 15 U.S.C.S. § 1601 et seq., is intended to promote the informed use of consumer credit by assuring meaningful disclosure of credit terms.

COMPLAINT

See 15 U.S.C.S. § 1601(a). The APR is one of the most important required disclosures, because it requires lenders to express uniformly the cost of a credit transaction (interest) as an annual rate. Reflecting the importance of this disclosure, TILA provides that the annual percentage rate shall be disclosed more conspicuously than other terms. 15 U.S.C.S. § 1632 (a). The Code of Federal Regulation provides that any change from a fixed to a variable interest rate before consummation of the loan affects the annual percentage rate, and the existence of the variable rate and the potential cost of the loan and must be disclosed. 12 C.F.R. §§ 226.17-.20.

93.     Even when a borrower cannot establish actual damages, lenders may be liable for technical or minor violations of the Truth in Lending Act (TILA), 15 U.S.C.S. § 1601 et seq., because, for instance, a proven violation of disclosure requirements is presumed to frustrate TILA's purpose of permitting consumers to compare various available credit terms. 15 U.S.C. § 1601(a).

94.     By the prominent wording of the total amount of interest that would be paid under the Defendants' proposed mortgage loan, Plaintiffs were led to believe that their interest payments under this loan were fixed at the amount disclosed by Defendants. The Defendants' false statement of the APR and the total interest under the term of this loan proximately caused Plaintiffs to select this loan from various competing offers, and ultimately to go into default when Defendants repeatedly raised the interest rate on said loan.

95.     Plaintiffs (1) read the TILA disclosure statement; (2) understood the interest charges being disclosed as a fixed amount; (3) Had the disclosure statement been accurate, they would have sought a lower price; and (4) they would have obtained a lower price for the mortgage on their home.

COMPLAINT

96.     Plaintiffs are informed and believe, and herein allege, that the Defendants had no intention of being bound by the fixed amount of interest disclosed to Plaintiffs. Therefore, the Defendants' disclosure of the APR and total interest throughout the term of the loan were false, and the Defendants knew the same to be false. Defendants concealed their intention not to protect consumers from false rebate claims. The prior announced understanding that Plaintiffs could and should rely on the Truth in Lending Disclosure Statement was at all times a material fact.

97.     Defendants confirmed their intentional misrepresentation by denying Plaintiffs any relief when they received his initial letter disputing the interest charges, and claiming that Defendants were engaging in fraud. Defendants' misrepresentation resulted in injury and damage to Plaintiffs.

98.     The above mentioned acts of Defendants were willful and fraudulent. Plaintiffs have suffered as a result of the Defendants' fraudulent misrepresentation. Plaintiffs are, therefore, entitled to special damages for their suffering, and punitive damages to deter the Defendants' fraud, in an amount to be determined at trial.

## COUNT XI (INJUNCTION/STAY)

99.     The Plaintiffs repeat, reallege, and incorporate by reference the foregoing paragraphs.

100.    The subject Property is Plaintiffs' residential homestead. Plaintiffs will be irreparably injured without adequate remedy at law if the currently threatened foreclosure is allowed to proceed, and Plaintiffs' property is taken from them. Plaintiffs ask that the Court restrain, and thereafter enjoin, any attempt to foreclose Plaintiffs= interest in the Property, or to

COMPLAINT

1    enforce any claim of right by any Defendant, or any third party, to possession of the Plaintiffs'
2    Property, pending resolution of this suit.

3        101.    For the reasons in the foregoing paragraph, and allegations elsewhere in the
4    foregoing paragraphs, it is crucial to the preservation of Plaintiffs' rights and Property that any
5    action in any other proceeding in any other court be barred from being commenced, or stayed if
6    already commenced, until final resolution of the instant case.

7        102.    Substantial recovery by Plaintiffs is probable, in view of the number and size of
8    the claims they make, the possibility of doubling or tripling of some damages, and their recovery
9    of fees and costs. The risk to Defendants associated with issuance of a temporary restraining
10   order is truly minimal, and issuance of such an order would be in the public interest, and
11   specifically in the interest of the integrity of the banking and home lending system that the
12   Congress has addressed in numerous statutes.
13

14       103.    The undersigned represents to the Court that on the date of filing of this
15   Complaint, to the best knowledge of the undersigned, neither Defendants nor Defendants=
16   counsel are agreeable to the temporary or permanent injunctive relief sought.
17

18                              **REQUEST FOR RELIEF**
19       WTHEREFORE, Plaintiffs pray that this Court:

20       1.    Declare that the Defendants' actions violate the New Hampshire
21             foreclosure statute, RSA 479,
22
23       2.    Declare that the Defendants' action violate the FDCPA

24       3.    Declare that the Defendants' actions violate the New Hampshire Unfair,
25             Deceptive or Unreasonable Collection Practices Act, RSA 358C.

26       4.    Declare the loan transaction rescinded, and order Defendants to release
27             their secured interest in the subject property.

COMPLAINT

5.     Enter judgment in favor of Plaintiffs for statutory damages, costs, and attorneys fees as provided by 15 U.S.C. §1692k (a)

6.     Enjoin any foreclosure sale;

7.     Award Plaintiffs compensatory damages in an amount to be determined at trial;

8.     Award Plaintiffs exemplary damages as allowed by law;

9.     Award Plaintiffs their reasonable and necessary attorney's fees and costs;

10.     Award Plaintiffs pre-judgment and post-judgment interest as allowed by law;

11.     Temporarily restrain, and permanently enjoin, any action to interfere with Plaintiffs' exclusive ownership, use and possession of their residence which was wrongfully threatened with foreclosure, pending resolution of the instant case, and specifically to bar enforcement of any and all foreclosure-related remedies, without limitation;

12.     Grant Plaintiffs such other and further relief as this Court deems just and proper.

Respectfully submitted

Thomas Hand Jr.
Salmon Falls Title & Legal Services, PLLC
PO Box 701
Somersworth, NH 03878
603.234.7675
Fax: 866.295.2808

21

COMPLAINT

Case 1:08-cv-00388-JM    Document 1    Filed 09/19/2008    Page 22 of 22

1

2

3                              VERIFICATION

4        I, the undersigned, certify and declare that I am a party to this action. I have read the

5   foregoing complaint and know of its contents. The matters stated in the complaint described

6   above are true of my knowledge except to those matters stated on information and belief, and

7   as to those matters I believe them to be true. Each page of Exhibit A attached thereto is derived

8   from my personal records, and is a true and correct copy of what it purports to be.

9        Executed on this 4th day of June, 2008 at CANTERBURY, New Hampshire.

10

11

12                                          Howard R Fogle, JR.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

22