UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Howard R. Fogle, Jr.
and Sharon Fogle

      v.                             Civil No. 08-cv-388-JD
                                       Opinion No. 2011 DNH 018

Wilmington Finance,
a division of AIG Federal
Savings Bank,
CountryWide Home Loans, and
Saratoga First Guarantee Funding

O R D E R

Howard R. Fogle, Jr. and Sharon Fogle brought suit against Wilmington Finance, a division of AIG Federal Savings Bank, ("AIG FSB"), Countrywide Home Loans (Countrywide), and Saratoga First Guarantee Funding (Saratoga), alleging violations of federal and state law in the course of providing, collecting and foreclosing on a home mortgage. The Fogles assert that AIG FSB, as originator of the loan, violated the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"), the Real Estate Settlement Procedures Act, 15 U.S.C. § 2601 et seq. ("RESPA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), and the New Hampshire Unfair, Deceptive or Unreasonable Collection Practices Act, N.H. Rev. Stat. § 358-C. They also claim breach of contract, breach of fiduciary duty, unjust

enrichment, wrongful foreclosure, and fraud.  AIG FSB now moves

for summary judgment under Federal Rule of Civil Procedure 56(b)

and (c).  The Fogles object.


### Standard of Review

"A party claiming relief may move . . . for summary judgment

on all or part of the claim."  Fed. R. Civ. P. 56(a).  Summary

judgment is appropriate when "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there

is no genuine issue as to any material fact and that the movant

is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c).  The party seeking summary judgment must first demonstrate

the absence of a genuine issue of material fact in the record.

See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A party

opposing a properly supported motion for summary judgment must

present competent evidence of record that shows a genuine issue

for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

256 (1986).  All reasonable inferences and all credibility issues

are resolved in favor of the nonmoving party.  See id. at 255.[1]

---

[1]In their statement of material facts, the Fogles rely in
part on their complaint, which includes a statement of
verification.  AIG FSB has not objected to the Fogles' reliance
on their complaint.  Under the law of this circuit, verified
complaints are "treated as the functional equivalent of an
affidavit to the extent that [they] satisf[y] the standards

<u>Background</u>

In November, 2005, the Fogles contacted a mortgage broker, Saratoga, to inquire about refinancing their Canterbury, New Hampshire home.  At some point during the refinancing, the Fogles received a TILA disclosure statement showing the finance charges and monthly payments that would be associated with a 30-year fixed-rate loan having an annual percentage rate of 6.398 percent ("Fixed-Rate TILA Disclosure Statement").  The document identifies Howard Fogle as the "Applicant" and provides an application number.  It states that it was "prepared by" Saratoga on November 18, 2005.  At the top of the page, in capital letters, it reads "THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND." (Doc. no. 24, Ex. 12).

Through Saratoga, the Fogles ultimately received an adjustable rate mortgage ("ARM")loan from AIG FSB in the amount of $294,750.  The loan had an initial interest rate of six percent that would adjust based on fluctuations in the London Interbank Offered Rate ("LIBOR") index every six months thereafter.

---

explicated in Rule 56(e). . . ." <u>Sheinkopf v. Stone</u>, 927 F.2d 1259, 1262 (1st Cir. 1991).  The court has considered the parts of the complaint cited by the Fogles.

On November 21, 2005, one week prior to the loan's closing, AIG FSB mailed the Fogles several pre-disclosures, including (1) A "Letter of Explanation" explaining how the "Amount Financed" and "APR" on the TILA disclosure statement would differ from those reflected in the Note; (2) an ARM disclosure outlining how the Fogles' interest rate would be determined under the terms of the loan; (3) a copy of the Fogles' initial loan application, dated November 18, 2005; and (4) a Good Faith Estimate estimating the closing costs of the loan.

At the closing of the loan on November 28, 2005, one or both of the Fogles signed the Mortgage and Note and several other disclosures, including (1) a RESPA Servicing Disclosure which stated that AIG FSB "presently intend[ed] to assign, sell or transfer the servicing of [the Fogles'] mortgage loan"; (2) a HUD-1 Settlement Statement summarizing the loan's transaction and settlement charges;[2] (3) a copy of the ARM disclosure; (4) a Mortgage Brokerage Business Contract stating the compensation to be paid to Saratoga as the Fogles' broker; (5) a Notice of the

_____

[2]AIG FSB later provided the Fogles with an updated version of the HUD-1 Settlement Statement ("Final HUD-1 Settlement Statement), which added a $1,339 payment to the Canterbury tax collector to the list of items to be paid in connection with the loan.  The two HUD-1 statements disclosed the same amount of total settlement charges, including all compensation paid to Saratoga.  The Fogles signed the Final HUD-1 Settlement Statement on December 9, 2005.

Fogles's Right to Cancel; and (6) a TILA disclosure statement, prepared by AIG FSB, which provided the annual percentage rate and finance charge of the loan, an itemization of the amount financed and a payment schedule reflecting the loan's variable rate ("Variable-Rate TILA Disclosure Statement").  (Doc. no. 24, Ex. 1-11).  Both Fogles also signed the Fixed-Rate TILA Disclosure Statement at closing.

On or around January 1, 2006, AIG FSB sold the loan and servicing rights to Countrywide.[3]  On January 10, 2006, AIG FSB sent Howard Fogle a letter notifying him of the transfer of servicing rights.  In the letter, the bank stated that the assignment of servicing rights would be effective January 30, 2006, and that AIG would stop accepting loan payments on January 29, 2006.

The Fogles made regular payments on the loan until February, 2008.  Countrywide sent the Fogles a Notice of Default on April 2, 2008.  On May 30, 2008, Howard Fogle sent AIG FSB a letter alleging various violations under TILA and notifying the bank of his intent to rescind the loan pursuant to 15 U.S.C. § 1635(a).

---

[3]The Mortgage Electronic Registration Systems shows that Countrywide then transferred ownership rights to The Bank of New York Mellon, N.A. on May 30, 2006.  (Doc. 24, Ex. 13).

5

AIG FSB responded to the letter on July 2, 2008.  It stated that after conducting a review of the Fogles' loan file, it "vigorously disput[ed] any suggestion of 'material violations' of the TILA" that would give rise to an extended rescission right. (Doc. no. 29, Ex. 10).  The letter also offered to refund the Fogles the $13,461 in settlement fees they had paid in connection with the closing of their loan with the bank.[4]

The Fogles filed suit on September 19, 2008.

## Discussion

A. <u>Truth in Lending Act Claims</u>

In Counts I and III, the Fogles allege that AIG FSB violated various provisions of TILA by failing to disclose, <u>inter alia</u>, that the Fogles' loan had a variable interest rate and the terms of that rate,[5] that the bank was taking a security interest in the plaintiffs' residence,[6] and that the Fogles could be charged

---

[4]The letter noted that the Fogles were entitled to a refund of $510.01 in settlement fees pursuant to a supervisory agreement the bank had entered into with the United States Department of the Treasury's Office of Thrift Supervision in June, 2007.  It offered to refund the Fogles the remaining $12,951 in settlement fees "although [it was] under no obligation to do so." (Doc. no. 29, Ex. 10).

[5]<u>See</u> 12 C.F.R. § 226.18(f)(2).

[6]<u>See</u> 15 U.S.C. § 1638(a)(9) and 12 C.F.R. §226.18(m).

for late payments.[7]   The Fogles also allege that the bank failed to provide various required documents in the time frame set forth by TILA, including a brief description of the loan's APR,[8] a copy of the Consumer Handbook on Adjustable Rate Mortgages or a suitable substitute,[9] a payment schedule reflecting the terms of the note,[10] a description of the total of payments,[11] and notice of the Fogles' right to cancel the contract.[12]   AIG FSB moves for summary judgment on both Counts I and III, on the ground that the claims are time-barred, or, in the alternative, that the undisputed evidence shows that AIG FSB complied with TILA's provisions as a matter of law.   The Fogles object.

Consumers who assert violations of TILA may seek damages under 15 U.S.C. § 1640(a), or, for certain violations, rescission of the loan transaction under 15 U.S.C. § 1635(a)-(b).   The Fogles do not specify the statute underlying their claim for TILA violations in Count I.   Because they seek rescission explicitly

---

[7]<u>See</u> 12 C.F.R. § 226.18(l).

[8]<u>See</u> 12 C.F.R. § 226.18(e).

[9]<u>See</u> 12 C.F.R. § 226.19(b)(1).

[10]<u>See</u> 12 C.F.R. § 226.18(g).

[11]<u>See</u> 12 C.F.R. § 226.18(h).

[12]<u>See</u> 12 C.F.R. § 226.23(b) and § 226.23(b).

7

in Count III, the Court will construe Count I as a claim for damages under § 1640(a).

1.    Count I -- Violations of TILA

In Count I, the Fogles allege that AIG FSB violated several provisions of TILA.  AIG FSB claims that to the extent that the Fogles seek damages under 15 U.S.C. § 1640(a), their claim is time-barred because it was brought more than a year after the alleged violations.  See 15 U.S.C. § 1640(e)(TILA actions must be brought "within one year from the date of the occurrence of the violation").

In their objection, the Fogles argue that their claim for damages is timely because it is subject to equitable tolling.  They claim that AIG FSB sought to "fraudulently conceal the true nature of the credit transaction," (Doc. no. 29, Ex. 12, p. 8).  They allege that AIG FSB did this by (1) providing two materially different TILA disclosure statements at closing, the combination of which obfuscated the terms of the loan; and (2) failing to deliver TILA-mandated pre-disclosures prior to the closing, or the final HUD-1 Settlement Statement until several days after the closing, thereby concealing certain payments that AIG FSB made to Saratoga for having brokered the loan.  The Fogles also point to

AIG FSB's offer to refund them more than $13,000 in closing costs as further evidence of the bank's fraudulent intent.

Generally, "the federal doctrine of fraudulent concealment operates to toll the statute of limitations 'where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part.'" <u>Salois</u> v. <u>Dime Sav. Bank, FSB</u>, 128 F.3d 20, 25 (1st Cir. 1997)(quoting <u>Holmberg</u> v. <u>Armbrecht</u>, 327 U.S. 392, 397 (1946))(internal quotation marks omitted).

Several circuits have held that this doctrine may be applied to a TILA violation, thus extending the time during which a consumer may raise a TILA claim.  <u>See, e.g.</u>, <u>Ellis v. General Motors Acceptance Corp.</u>, 160 F.3d 703 (11th Cir. 1998); <u>Ramadan v. Chase Manhattan Corp.</u>, 156 F.3d 499 (3d Cir. 1998); <u>King v. California</u>, 784 F.2d 910 (9th Cir. 1986); <u>Jones v. TransOhio Sav. Bank</u>, 747 F.2d 1037 (6th Cir. 1984).  When it applies, the doctrine of equitable tolling is a narrow one, however, "appropriate only when the circumstances that cause a plaintiff to miss a filing deadline are out of his hands." <u>Salois</u>, 128 F.3d at 25.

a.    The Two TILA Disclosure Statements

It is undisputed that the Fogles signed both the Fixed-Rate TILA Disclosure Statement and the Variable-Rate TILA Disclosure Statement at closing.  AIG FSB asserts that it provided only the Variable-Rate TILA Disclosure Statement, which accurately described the terms of the Fogles' loan.

The evidence in the record indicates that Saratoga prepared the Fixed-Rate TILA disclosure statement during the application process.  The document identifies Saratoga as the preparer and is dated ten days' prior to the loan's closing date. It refers to Howard Fogle as the "Applicant," and states in capital letters that it is not a contract or a commitment to lend.[13]

Even if the Fogles were confused by the different terms presented in the two documents, they cannot establish that their confusion was the result of AIG FSB's actions.  Because the Fogles cannot show that AIG FSB provided the Fixed-Rate TILA Disclosure Statement or that a factual dispute exists as to whether AIG FSB provided it, they cannot rely on their receipt of

---

[13]In contrast, the Variable-Rate TILA disclosure statement identifies AIG FSB as the preparer and is dated November 28, 2005, the date of the loan's closing.  It refers to Howard and Sharon Fogle as the "Borrowers."

that document to support their argument that TILA should be
equitably tolled.[14]

b.   The Pre-Disclosures and HUD-1 Settlement Statement

The record shows that AIG FSB mailed the Fogles the required
pre-disclosures one week before the closing and provided the
Fogles a version of the HUD-1 Settlement Statement that
accurately reflected all payments to Saratoga at the closing,
when the Fogles signed it.  Even if, as the Fogles assert, AIG
FSB had not provided the pre-disclosures until the closing or the
HUD-1 Settlement Statement until several days thereafter, the
Fogles do not dispute that they had all relevant documentation
regarding their loan by at least December of 2005.  Because they
did not file suit until September of 2008, the claim would be
time-barred.

---

[14]Even if AIG FSB had supplied both TILA disclosure
statements, the Fogles have failed to explain why they would have
been unable to uncover this fraud at an earlier date.  Arguably,
they should have been aware that their loan had a variable
interest rate by August of 2006 at the latest, when their
interest rate first adjusted and their payments jumped from
$1767.18 to $2,158.53 a month.

c.   <u>AIG FSB's Response to the Fogles' Notice of Rescission</u>

AIG FSB responded to the Fogles' Notice of Rescission in a letter dated July 2, 2008.  In the letter, AIG FSB "vigorously disput[ed] any suggestion of 'material violations' of the TILA," but, nevertheless, offered to refund the Fogles' settlement fees in exchange for their signing an agreement to release AIG FSB from any and all civil claims that could arise at any time in connection with their refinance.[15]

The Fogles cite the letter from AIG FSB as evidence of TILA violations by AIG FSB.  Taken in the light most favorable to the Fogles, the letter might support an inference of some irregularity in the refinancing process.  AIG FSB challenges the Fogles' reliance on the letter, however, on the ground that it is inadmissible under Federal Rule of Evidence 408(a).  The Fogles do not dispute AIG FSB's challenge to the admissibility of the letter.

It is unlikely in these circumstances that the letter could be considered for purposes of opposing summary judgment.  <u>See, e.g.</u>, <u>Davis v. Dawson</u>, 15 F. Supp. 2d 64, 98 (D. Mass. 1998).  Even if the letter were considered, however, the possible inference of irregularity is insufficient in light of the other

_____

[15]The parties do not provide evidence as to whether any further action was taken regarding AIG FSB's offer.

12

record evidence to demonstrate a triable issue as to whether AIG-FSB fraudulently concealed violations of TILA provisions during the Fogles' refinancing.

2.   <u>Rescission under TILA</u>

When a consumer has obtained a non-purchase money mortgage on a residential dwelling – as the Fogles did in this case – the consumer has a right to rescind the transaction "within three days of the transaction's consummation or three days from the delivery of [certain] material disclosures, whichever occurs later." <u>Palmer</u> v. <u>Champion Mortg.</u>, 465 F.3d 24, 27 (1st Cir. 2006).  TILA defines as "material" those disclosures involving the annual percentage rate, the finance charge, the amount to be financed, the total of payments, and the payment schedule.  <u>See</u> 15 U.S.C. § 1602(v); 12 C.F.R. § 226.23.  The creditor must also provide the consumer clear notice of this rescission right.  <u>See</u> 12 C.F.R. § 226.23(b)(1).  "Should a creditor fail to deliver any of the required material disclosures (including notice of the right to rescind), the debtor may rescind at any time up to three years following the consummation of the transaction."  <u>Palmer</u>, 465 F.3d at 27 (citing 12 C.F.R. § 226.23(a)(3)).

The Fogles first raised their rescission claim on May 30, 2008, two and a half years after the consummation of their loan

13

transaction.  They argue that they are entitled to an extended rescission period because AIG FSB (1) provided two TILA disclosure statements describing loans with materially different terms; (2) failed to provide the required pre-disclosure documents prior to the closing; (3) "purposefully concealed" Saratoga's compensation by failing to provide the final HUD-1 Settlement Statement until several days after the closing; and (4) provided two materially different Good Faith Estimates, neither of which disclosed Saratoga's compensation.

The Fogles again assert that AIG FSB provided both the Fixed-Rate and Variable-Rate TILA Disclosure Statements.  The Fogles concede that the material disclosures in the Variable-Rate Disclosure Statement were accurate.  They argue, however, that the information provided in the Fixed-Rate TILA Disclosure obviated those disclosures.  See, e.g., Pulphus v. Sullivan, 2003 U.S. Dist. LEXIS 7080, 38-39 (N.D. Ill. Apr. 25, 2003)(holding that providing two different TILA disclosure statements at closing was a material violation).  Again, the Fogles have not provided evidence that AIG FSB in fact prepared or provided the Fixed-Rate TILA Disclosure Statement.  The Fogles' rescission

claim in Count III fails to the extent it relies on this document.[16]

The Fogles' remaining arguments appear to be based on the mistaken premise that any violation of TILA triggers the extended rescission right.  Even if AIG FSB had provided two contradictory Good Faith Estimates or failed to provide the required pre-disclosures or to disclose Saratoga's compensation, these failures alone do not give rise to an extended rescission right. See 12 C.F.R. § 226.23(a)(3), n. 48 (enumerating the "material disclosures" that trigger the extended rescission period).

The Fogles have failed to show a genuine issue of material fact that precludes granting summary judgment for AIG FSB on Count III.

B.   Real Estate Settlement Procedures Act

In Count II, the Fogles allege several violations of RESPA. They contend that AIG FSB violated RESPA's disclosure provisions, set forth in 12 U.S.C. § 2603 and § 2604, by failing to report

---

[16]Because the Fogles did not show that AIG FSB provided the Fixed Rate statement or that a factual dispute exists as to whether AIG FSB provided it, the court need not consider the legal question of whether the provision of two distinct TILA statements, one of which accurately provides all material disclosures and one of which does not, would constitute a material violation and therefore extend the consumer's rescission period under TILA.

certain charges or providing inaccurate charges on the HUD-1
Settlement Statement, see 24 C.F.R. § 3500.8, and failing to
provide the Fogles with the good faith estimate within three days
of receipt of their loan application, see 24 C.F.R. § 3500.7.
The Fogles also claim that AIG FSB and Saratoga charged them an
excessive loan origination fee and yield spread premium that
"possibly" constituted an illegal kickback under 12 U.S.C. § 2607
and 24 C.F.R. § 3500.14.  Finally, they assert that AIG FSB and
Saratoga failed to obtain written acknowledgment that the Fogles
had received the RESPA servicing disclosure for their loan, in
violation of 12 U.S.C. § 2605 and 24 C.F.R. § 3500.21(c).

     AIG FSB moves for summary judgment on the Fogles' RESPA
claim.  It argues that RESPA does not provide a private right of
action under § 2603 and § 2604, and that the Fogles' disclosure
claims under these statutes fail as a matter of law.[17]  AIG FSB
asserts that its payments to Saratoga were not illegal kickbacks
under § 2607, and, alternatively, that the Fogles' allegations of
violations under § 2607 are time-barred.  AIG FSB contends that

---

[17]AIG FSB argues that the Fogles' claim that charges were
"missing or inaccurate" on the HUD-1 Statement also fails as a
matter of law because it does not identify which charges were
"missing or inaccurate," and therefore fails to meet the basic
pleading standards intended to put the defendants on notice of
the claims brought against them.  See Ashcroft v. Iqbal, 129
S.Ct. 1937, 1952 (2009).

the Fogles' argument that AIG FSB failed to obtain written
acknowledgment of their receipt of the RESPA servicing disclosure
is belied by the undisputed evidence.

In their objection, the Fogles do not respond to AIG FSB's
argument that RESPA does not provide a private right of action
for claims raised under § 2603 and § 2604.[18]  They do argue that
the part of their RESPA claim brought under § 2607 is not time-
barred because the one-year statute of limitations for raising
such claims was equitably tolled, and they maintain that triable
questions of fact remain as to whether AIG FSB violated RESPA's
provisions.

## 1.   Disclosure Under § 2603 and § 2604

In § 2603, RESPA requires lenders to use a uniform
settlement statement which "conspicuously and clearly itemize(s)
all charges imposed upon the borrower and all charges imposed
upon the seller in connection with the settlement," and to
provide this form to borrowers at or before the time of

---

[18]Instead of engaging AIG FSB's argument directly, the
Fogles argue only that 12 U.S.C. § 2605 provides a private right
of action where a defendant has failed to provide certain
servicing disclosures, a fact which AIG FSB does not dispute and
which is not the basis for the Fogles' allegations of disclosure
violations under § 2603 and § 2604.  The Fogles then proceed to
defend their § 2603 and § 2604 claims on the merits.

17

settlement.  § 2603(a), (b).  Pursuant to § 2604, lenders are
required to provide borrowers with information booklets, as well
as "a good faith estimate of the amount or range of charges for
specific settlement services the borrower is likely to incur in
connection with the settlement," § 2604(c), within three days
after receipt of the application.  § 2604(d).

The First Circuit has never had occasion to consider whether
§ 2603 and § 2604 provide a private right of action.  Other
federal courts that have considered the question, however, have
held that they do not.  See Chow v. Aegis Mort. Corp., 286 F.
Supp. 2d 956, 962 (N.D. Ill. 2003) (surveying RESPA disclosure
cases and legislative history and holding that technical
violations of RESPA disclosure requirements do not give rise to a
private right of action); see also Harris v. Sand Canyon Corp,
No. 08-cv-3692, 2010 U.S. Dist. LEXIS 74228 at *16-17 (D.S.C.
July 22, 2010)(citing recent cases).  These courts have noted
that 12 U.S.C. § 2614 expressly provides a private right of
action for actions brought pursuant to 12 U.S.C. § 2605, § 2607,
and § 2608.  The cases concluded that Congress's decision to
refer to only three RESPA provisions, specifically, in 12 U.S.C.
§ 2614 indicates a lack of congressional intent to grant private
rights of action for RESPA's other provisions. See, e.g. Collins
v. FMHA-USDA, 105 F.3d 1366, 1367-68 (11th Cir. 1997); Louisiana

v. Litton Mortgage Co., 50 F.3d 1298, 1301-02 (5th Cir. 1995);

Allison v. Liberty Sav., 695 F.2d 1086, 1089-91 (7th Cir.

1982).[19]  But see Vega v. First Fed. Sav. & Loan Ass'n, 622 F.2d

918, 925 n. 8 (6th Cir. 1980)(holding that RESPA creates a

private right of action for violations of 12 U.S.C. §§ 2609 and

2610).  Other district courts in this circuit have adopted the

reasoning of the Fifth, Seventh and Eleventh Circuits.  See De

Jesus-Serrano v. Sana Inv. Mortg. Brokers, Inc., 552 F. Supp. 2d

191, 195 (D.P.R. 2007)(holding no private cause of action under

RESPA for violations of § 2604); Campbell v. Machias Sav. Bank,

865 F. Supp. 26 (D. Me. 1994))(holding no private cause of action

for violations of § 2609).

      The reasoning in the cited decisions is persuasive and

supports the conclusion that RESPA does not create a private

right of action for violation of its disclosure provisions.

Therefore, AIG FSB is entitled to summary judgment on the Fogles'

claims under § 2603 and § 2604.

---

      [19]In reaching this conclusion, these courts applied the
Supreme Court's test under Cort v. Ash, 422 U.S. 66, 78 (1975)
for determining whether a statute implicitly creates a private
remedy.

2.   <u>§ 2607 "Kickbacks and Unearned Fees"</u>

RESPA prohibits any person from giving or accepting "any
fee, kickback, or thing of value pursuant to any agreement or
understanding . . . that business incident to or a part of a real
estate service . . . shall be referred to any person," § 2607(a),
and from accepting any unearned fee in relation to a settlement
service, § 2607(b).  The statute of limitations for bringing a
private cause of action for an alleged violation of § 2607 is one
year "from the date of the occurrence of the violation."  § 2614.

The Fogles do not appear to challenge AIG FSB's assertion
that the date of the alleged violation was November 28, 2005,
when the Fogles closed on their loan.  They contend, however,
that the bank's fraudulent conduct equitably tolled the statute
of limitations.

The Fogles' arguments mirror the arguments they made as to
why AIG FSB's actions tolled the statute of limitations under
TILA.  They contend that (1) AIG FSB failed to provide them with
the required pre-disclosures under RESPA, thereby purposefully
concealing their yield spread premium and the fact that AIG FSB
shared closing costs with Saratoga, (2) AIG FSB provided them
with two materially different Good Faith Estimates, and (3) AIG
FSB provided them with two materially different TILA disclosure

statements, one for a variable interest rate and one for a fixed-interest-rate loan.

The court has concluded, for the reasons stated above, that the Fogles failed to demonstrate a triable issue as to whether AIG FSB provided the Fixed-Rate TILA Disclosure Statement.[20]  But even if all of their accusations were true, the Fogles failed to explain how AIG FSB fraudulently concealed any information about the loan so as to equitably toll RESPA's statute of limitations until September, 2008.  At the very least, the undisputed evidence shows that the Fogles had all of the information about their loan as of December 9, 2005, the date on which Howard Fogle signed the Final HUD-1 Settlement Statement.

The Fogles have not shown that a triable issue exists as to whether RESPA's one-year statute of limitations for private actions pursuant to 12 U.S.C. § 2607 was tolled beyond December 9, 2005.  Thus, the portion of their RESPA claim brought under § 2607 is time-barred.

---

[20]This argument also appears to be inapposite to the question of whether AIG FSB gave or received illegal kickbacks or fees.

3.   <u>§ 2605 Servicing Disclosure</u>

RESPA requires lenders to "disclose to each person who applies for the loan, <u>at the time of application for the loan</u>, whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding." 12 U.S.C. § 2605(a)(emphasis added).  The applicable regulation, 24 C.F.R. § 3500.21(c), instructs the lender to deliver the Servicing Disclosure Statement within three business days from receipt of the borrower's application "by hand delivery, by placing it in the mail, or, if the applicant agrees, by fax, e-mail, or other electronic means."

In their complaint, the Fogles allege that AIG FSB "failed to obtain a written acknowledgment of the servicing disclosure from plaintiffs per 24 C.F.R. § 3500.21(c)."  AIG FSB has produced a copy of the RESPA Servicing Disclosure Statement that was signed by Howard Fogle on November 28, 2005, the date of the loan's closing.  The Fogles do not dispute the authenticity of this document, which clearly refutes their claim.

To the extent that the Fogles now allege that the defendants failed to provide the Servicing Disclosure Statement within three days of receiving their loan application, they have not shown a factual dispute to support their claim.  Although the Fogles allege that they never received the initial disclosure statement,

22

and Howard Fogle stated this in his affidavit, § 3500.21(c) requires only that the lender place the servicing statement in the mail.  AIG FSB has presented the signed statement of an AIG FSB employee certifying that he mailed the RESPA servicing disclosure on November 21, 2005, within three days of receiving the Fogles's loan application.  The Fogles have not provided any contrary evidence.  Therefore, the undisputed evidence in the record shows that AIG FSB complied with § 2605(a).

Because the Fogles have not shown that a triable issue exists for purposes of their RESPA claim, AIG is entitled to summary judgment.

## C.   Breach of Contract and Unjust Enrichment

In Count IV, the Fogles allege that they were wrongly charged interest to fund the yield spread premium and broker's fee paid to Saratoga.  They assert that this compensation, which totaled $15,247.75, was not specified in any express contract and was possibly prohibited by New Hampshire law.[21]  They seek damages from AIG FSB under a quasi-contract theory and also appear to allege breach of contract.  In Count VIII, the Fogles

---

[21]According to the Complaint, Saratoga received $10,530.25 in loan origination fees, a processing fee of $575 and the yield spread premium of $4,142.50.

contend that both AIG FSB and Saratoga were unjustly enriched by the payment of these fees at the Fogles' expense, and that allowing them to retain the benefit "would be contrary to the rules of equity."

AIG FSB contends that the Fogles' quasi-contract and unjust enrichment claims fail as a matter of law because all of the payments in question were set forth in an express contract between the parties.  Alternatively, AIG FSB argues, it is entitled to summary judgment on both claims because the Fogles failed to plead any facts as to why it was unjust for the defendants to retain the payments.  AIG FSB also maintains that it fulfilled all of its obligations under the parties' contract and that the Fogles have failed to point to any facts suggesting otherwise.

1.   Quasi-Contract and Unjust Enrichment

Under New Hampshire law, a quasi-contract or implied-in-law contract is "not a contract but is a legal remedy imposed by the court without reference to the assent of the obligor, arising from the receipt of a benefit the retention of which is unjust, and requiring the obligor to make restitution."  Morgenroth & Assocs. v. Tilton, 121 N.H. 511, 514 (1981)(internal quotation marks and brackets omitted).  A defendant is unjustly enriched,

and the plaintiff entitled to restitution, "when the court determines that the defendant 'has received a benefit and it would be unconscionable for the defendant to retain that benefit.'"  Invest Almaz v. Temple-Island Forest Prods. Corp., 243 F.3d 57, 64 (1st Cir. 2001)(quoting Nat'l Employment Serv. Corp. v. Olsten Staffing Serv., Inc., 145 N.H. 158, 163 (2000)). "A claim of unjust enrichment will not lie 'where there is a valid express contract between the parties . . . because the law will not imply a quasi-contract.'"  J.G.M.C.J. Corp. v. Sears, Roebuck & Co., 391 F.3d 364, 370 (1st Cir. 2004)(quoting Tentindo v. Locke Lake Colony Ass'n, 120 N.H. 593, 597 (1980))(internal brackets omitted).

In their objection, the Fogles assert that a genuine question of material fact exists as to whether the parties had a valid, express contract that included the payments to Saratoga. They appear to argue that AIG FSB breached the parties' contract, and thus no express contract existed.

The record demonstrates that the parties did have an express contract, and that the contract clearly outlined the challenged payments to Saratoga.  The Mortgage Brokerage Business Contract, signed by the Fogles on November 28, 2005, provided that the Fogles would be charged the $10,530.25 loan origination fee and the $575 processing fee, and stated that Saratoga, as broker,

25

could receive additional compensation from AIG FSB for securing
the loan totaling 0 to 3 percent of the total loan amount.[22]  The
HUD-1 Settlement Statement, drafts of which the Fogles signed on
November 28, 2005, and December 9, 2005, provided an itemization
of all of the fees the Fogles now question, including the yield
spread premium.  The Fogles fail to provide any evidence that the
contract between the parties was invalid.[23]  Thus, the Fogles'
quasi-contract and unjust enrichment claims fail as a matter of
law.

2.   Breach of Contract

To the extent that Count IV can be construed as a breach of
contract claim, it also fails as a matter of law.

Under New Hampshire law, "'[a] breach of contract occurs
when there is a failure without legal excuse to perform any
promise which forms the whole or part of a contract.'" Lassonde
v. Stanton, 157 N.H. 582, 588 (2008) (quoting Poland v. Twomey,
156 N.H. 412, 415 (2007))(alteration omitted).

---

[22]The $4,124.25 yield spread premium paid to Saratoga
equaled about 1.4 percent of the total loan amount.

[23]Indeed, the Fogles's only argument, that AIG FSB breached
the parties' contract, necessarily rests on an assumption that a
valid contract did exist.

The Fogles do not point to any facts in the record that support their allegation that AIG FSB failed to perform all of its contractual obligations.  As noted above, the record shows that the challenged payments to Saratoga were all clearly itemized in the parties' contract.

AIG FSB is entitled to summary judgment on Counts IV and VIII.

D.    <u>Fraud</u>

In Count X, the Fogles claim that AIG FSB engaged in fraud by "misrepresenting the interest rate that would be applied to Plaintiffs' loan" in the TILA disclosure statement.  AIG FSB argues both that the Fogles' fraud claim fails on its merits and that it is preempted by the Home Owners Loan Act (HOLA), 12 U.S.C. §§ 1461 <u>et seq</u>.  The court need only address the first argument.

To establish fraud under New Hampshire law, "a plaintiff must prove that the defendant made a representation with knowledge of its falsity or with conscious indifference to its truth with the intention to cause another to rely upon it." <u>Snierson v. Scruton</u>, 145 N.H. 73, 77 (2000).  The plaintiff must also demonstrate "justifiable reliance." <u>Id.</u>

The Fogles claim that AIG FSB fraudulently induced them to
accept the mortgage loan by representing that it would have a
fixed annual percentage rate when in fact the loan's interest
rate was variable.  All evidence in the record suggests that AIG
FSB did disclose the loan's variable rate in the loan documents
provided to the plaintiffs.[24]

The Fogles also allege, for the first time in their
objection, that their fraud claim includes AIG FSB's purported
failure to disclose the loan's yield spread premium.  As
discussed above, the record shows that AIG FSB did specify the
amount of the yield spread premium in the HUD-1 Settlement
Statement which the plaintiffs signed at the time of closing.
The plaintiffs do not point to any evidence in the record that
AIG FSB made a false representation about the payment at any time
during the course of the loan transaction.

_____

[24]In their complaint and objection, the Fogles rely on the
Fixed-Rate TILA Disclosure Statement as evidence that AIG FSB
misrepresented the loan's terms.  As the court has explained,
Saratoga provided the fixed-rate statement, not AIG FSB.   The
Fogles do not specifically challenge as fraudulent AIG FSB's
disclosure of the variable interest rate in the Variable-Rate
TILA Disclosure Statement or other loan documents. Any fraud
allegations predicated on these documents also fail as a matter
of law.   "A plaintiff cannot allege fraud in general terms, but
must specifically allege the essential details of the fraud and
the facts of the defendants' fraudulent conduct."   Id.

AIG FSB is thus entitled to summary judgment on Count X.

E.   Claims Related to Servicing of the Fogles' Loan and Foreclosure

In Counts V, VI, IX, and XI, the Fogles assert several federal and state claims against AIG FSB related to the servicing of the Fogles' loan once it was in default and the foreclosure of their home.[25]

The record demonstrates that AIG FSB sold the Fogles' loan and servicing rights within months of the closing date.  A copy of a report from the Mortgage Electronic Registration Systems, submitted as evidence by AIG FSB, shows that AIG FSB transferred the servicing rights to the loan to BAC Home Loans Servicing, LP, formerly Countrywide Home Loans Inc., on January 6, 2006.  According to the report, BAC Home Loans Servicing, LP also held the beneficial rights to the loan at that time and then transferred them to the Bank of New York Mellon, N.A. on May 26, 2006.  AIG FSB's vice president stated in an affidavit that AIG FSB "sold the Loan on or about January 1, 2006, and has had no

---

[25] In Counts V, VI, and IX, respectively, the Fogles allege that the defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq., and the New Hampshire Unfair, Deceptive or Unreasonable Collection Practices Act, N.H. Rev. Stat. § 358-C, and committed wrongful foreclosure.  In Count XI, they request that the court enjoin the foreclosure of their home.

involvement whatsoever with the Loan since then, including
involvement related to the alleged debt collection and/or
foreclosure."

The Fogles maintain that AIG FSB continued to be involved
with the loan's administration after divesting itself of the
loan's servicing rights.  They offer as evidence two letters that
AIG FSB sent to the Fogles, in January of 2006 and July of 2008.
The first letter notified the Fogles of the transfer of servicing
rights but stated that AIG FSB would continue to accept loan
payments until January 29, 2006.  The second was AIG FSB's
response to Howard Fogle's notice of rescission, in which it
"vigorously dispute[d]" that it had committed "material
violations" of TILA in originating the loan.  The Fogles argue
that AIG FSB's continued correspondence with them and the fact
that it agreed to accept payments for several weeks after the
transfer of the loan were inconsistent with its position that it
had no further involvement in the loan's administration.

AIG FSB's offer to continue to accept payments for a month
after the 2006 servicing transfer as a courtesy does not suggest
its involvement in efforts to collect on the Fogles' debt after
their March, 2008, default or in the foreclosure of their home.
Nor does AIG FSB's 2008 response to the Fogles' rescission letter

support a reasonable inference that it continued to play a role in the administration of the loan.

The Fogles have not presented a genuine question of material fact as to whether AIG FSB continued to service their loan after default.  AIG FSB is therefore entitled to summary judgment on Counts V, VI, IX, and XI.

F.    Breach of Fiduciary Duty

As AIG FSB points out and the Fogles do not dispute, Count VII, for Breach of Fiduciary Duty, alleges only that a fiduciary duty existed between the Fogles and Saratoga and does not claim that AIG FSB had such a duty.  All claims against Saratoga were dismissed without prejudice on December 15, 2010.  (Doc. no. 45).

Conclusion

For the foregoing reasons, AIG FSB's motion for summary judgment (doc. no. 21) is granted.

Because all of the claims remaining in this case are resolved in this opinion, the clerk of court shall enter judgment

in accord with the orders issued on March 16, 2010; December 15, 2010; January 11, 2011; and this order, and close the case.


        SO ORDERED.


                              _Joseph A. DiClerico, Jr._
                              Joseph A. DiClerico, Jr.
                              United States District Judge

January 31, 2011

cc:   Chad W. Higgins, Esquire
      John A. Mangones, Esquire
      Joy Harmon Sperling, Esquire
      Todd W. Stevens, Esquire
      Mark E. Swirbalus, Esquire
      Michael A. Weiss, Esquire